## PROSECUTION OF OWNER OF AUTOMOBILE FOR EXCEEDING SPEED LIMIT.

Court of Common Pleas of Cuyahoga County.

### R. W. PARKER v. VILLAGE OF DOVER.

Decided, February 24, 1916.

*Criminal Law—Inadequate Proof of Exceeding Speed Limit with Automobile—Responsibility of Defendant Owner Not Shown—Failure of Defendant to Take the Stand Does Not Lessen the Proof Required Against Him.*

1. The owner of an automobile can not be legally prosecuted and compelled to pay a fine and costs for exceeding the speed limit with his automobile, where the only evidence against him is that his automobile was seen going along a public highway at a speed greater than that allowed by law.

2. The amendment to the Constitution of 1912, relating to the failure of a defendant in a criminal prosecution to take the stand and testify, in no way lessens the proof required before a conviction can be had, nor does it change the well settled rule of procedure that before a defendant can be called upon to produce his defense the state must prove every essential element of the crime charged.

POWELL, J.

Plaintiff in error was arrested and placed on trial in the mayor's court of the village of Dover, Cuyahoga county, Ohio, upon the following affidavit, to-wit:

"Before me, mayor of the village of Dover, in Cuyahoga county, personally came Fred Smith, deputy marshal, who being

duly sworn according to law, deposes and says that on or about the 19th day of September, A. D. 1915, at said village and county, one Dr. R. W. Parker, being then and there in charge of and operating a certain motor vehicle, to-wit, an automobile, did unlawfully, wilfully and purposely operate said vehicle on Bradley road, in the said village and county, at a rate of speed greater than fifteen miles per hour, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Ohio, and further deponent says not.

"(Signed)    FRED SMITH.

"Sworn to and subscribed before me, this 25th day of September, A. D. 1915.

"(Signed)    AUG. C. FORTLAGE, *Mayor.*"

To this affidavit plaintiff in error filed a motion to quash, which being overruled, a demurrer was filed. After the overruling of the demurrer, plaintiff in error entered a plea of not guilty.

Upon the trial, numerous objections were interposed by able counsel for plaintiff in error, and at the close of the testimony a motion was made to dismiss the case and discharge plaintiff in error, upon the ground that the village had failed to sustain the allegations in the affidavit.

This motion the trial court overruled, and imposed a fine of ten dollars. A motion for a new trial was duly filed and refused. Proper exceptions were taken throughout the case.

The case comes into this court upon a petition in error to reverse the judgment of the mayor's court and to discharge plaintiff in error.

The most important question presented by this record which will first be considered is, can an owner of an automobile be arrested, convicted and mulcted by fine and costs solely upon proof that his automobile was seen going along a public highway at a rate of speed greater than that permitted by law?

This question becomes important because the automobile, which a few years ago was a luxury to be enjoyed by the wealthy only, is now a necessity, and has become so common that a person of ordinary means may own one. The common use of auto-

mobiles for pleasure has given birth to an industry by which certain not over-scrupulous justices and special constables have materially increased their incomes without great labor on their part. Recognizing the fact that the average citizen is not familiar with court procedure, and so abhorrent to arrest and trial that he would pay from ten to fifteen dollars rather than go through the ordeal, these speed merchants would station one of their minions under a shady tree along a much-traveled highway on Sunday afternoon, who would take the license number of every prosperous-looking driver, regardless of the speed of the machine. A few days later the owner would receive a notice to appear before some justice in a remote part of the county to answer to the charge of violating the speed law. He was usually advised that if he would plead guilty he would be assessed a nominal fine and costs. The owner, having no knowledge of any speed violation on his part, thought it would be the part of economy to comply with this most kind and brotherly offer of the justice, and usually paid.

To protect the ordinary owner in event he should be so unfortunate as to fall into the trap of these most kind and considerate speed merchants, as well as to instruct the honest official who is conscientiously endeavoring to perform his duty, is the purpose of attempting to point out in this decision what evidence is necessary to convict in this class of cases.

In justice to those concerned, I should say in passing that in my opinion all persons connected with the prosecution of the case at bar were honestly endeavoring to perform their duty in suppressing speed violation. There is a class of reckless drivers who take advantage of every opportunity to violate the speed law. They have no regard for the rights of others, and seemingly none for their own safety. These offenders should be dealt with severely. The officer who captures and convicts this class of drivers is entitled to the highest commendation; but even these drivers should not be convicted without due process of law. Surely the driver of an automobile is entitled to as much consideration as a murderer or a highway robber. Sup-

pose you are assaulted some dark night at an unfrequented place, you are knocked down and rendered unconscious, your money and other valuables are taken from you.  The police arrest some crook who they suspect committed the crime.  He is indicted and placed upon trial.  The law surrounds him with every safeguard; he is presumed to be innocent until proven guilty; every essential element of the crime of robbery must be proven beyond a reasonable doubt before he can be convicted. Is it such a heinous crime for a man to take his family out for a ride that he thereby forfeits his right to be treated equally as well as a highway robber?

The affidavit in this case is based upon Section 12604 of the General Code of Ohio, which, so far as it applies to this case, provides as follows:

"Whoever operates a motor vehicle at a greater speed than fifteen miles per hour shall be fined not more than $25."

Before a conviction could be had in this case, it was necessary for the village to prove beyond a reasonable doubt the two essential elements of the offense charged, namely:

1.   That the law had been violated, *corpus delicti;* that is, that a motor vehicle had been operated at a greater rate of speed than fifteen miles per hour.

2.   That the plaintiff in error is the person who violated the law; that is, that he is the person who operated this motor vehicle on the day in question at a rate of speed greater than fifteen miles per hour.

The *corpus delicti* is established by the testimony of the deputy marshal.  But another step is necessary to produce a conviction, and that is the identity of the person charged.  The evidence as to the identity of the person operating this motor vehicle on September 19, 1915, is wholly circumstantial, and is based solely upon the testimony of Fred Smith, deputy marshal of the village of Dover.  He testified, in brief, that he was out catching speeders on the afternoon of September 19th, 1915, and that he observed a machine on Bradley road which he

thought was exceeding the speed limit. He confirmed his suspicions by giving chase for a distance of about one-half mile on his motorcycle, which registered a speed of thirty-two miles per hour. He said he made a note of the number, which was 47311. What he next did is shown by the record on page 11:

"Q. When did you first learn that the car that you followed for half a mile and which carried the license number you mentioned, belonged to Dr. Parker? A. I found out that evening.

"Q. How did you ascertain that fact? A. The mayor here has a book with the numbers in."

This is the only testimony in the case showing the ownership of the automobile in question. The book was not introduced in evidence. Upon these facts he swore to the affidavit and caused the arrest of plaintiff in error.

It appears from the record that this officer acted upon the theory that this law reads as follows: *"Whoever, being the owner of a car that is observed exceeding the speed limit shall be guilty of an offense,"* because he made no effort to learn either the name or identity of the person operating this car. There is not a word of testimony in this case showing or tending to show that Dr. Parker was operating this car, or that he was in the car at the time, or that he was in the village of Dover on that day.

The following quotations from the record is all of the testimony relative to the identity of the person operating this automobile (reading from page 14):

"Q. Who was driving the car? A. I couldn't tell you that. I couldn't see from the rear who was driving, because I don't know whether it's a left-hand drive or a right-hand drive.

"Q. And you don't know who was driving the car? A. No, I don't."

Again at page 15:

"Q. But you don't know who was driving that car, as a matter of fact? A. If it was a right-hand drive—

"Q.  I am not asking you that.  A. Well, I don't know.

"Q.  Did you know Dr. Parker on the 19th of September?
A. No, sir.

"Q.  Did you see him in the village of Dover on the 19th
of September?  A. I saw his machine.  I don't know whether I
saw him or not."

The only circumstance disclosed by the record is that an auto-
mobile presumably owned by Dr. Parker was observed by the
officer traveling along Bradley road at a rate of speed exceeding
fifteen miles per hour.  The proof as to ownership was meager
and improperly received.

Now, as to identity.  Section 184, page 122, *Harris on Identifi-
cation,* is as follows:

"The identity of persons or things is a fact, to be proved
like other facts before a jury, and may be proved by any of the
various means known to the law of evidence, whether in a gen-
eral or special way, and whether by expert testimony, by com-
parison, or by circumstantial evidence; and often where the
more rigid rules of the law of evidence are relaxed, more flexi-
ble, more liberal, when the issue presents a question of disputed
or doubtful identity.  These cases, indeed, often form an excep-
tion to the general and well-recognized rules of evidence.  The
necessity for a relaxation of these rules grows out of the extreme
difficulty which arises in making the proof, and especially is
this true in criminal practice; take, for instance, a case of homi-
cide; *the first step, of course, is to prove the corpus delicti and
the venue; the next, and no less important, step is the identity
of both the deceased and the accused; and unless the identifica-
tion is clear and beyond a reasonable doubt, the prosecution
must fail.*  And this often presents difficult, serious and grave
consideration.  And the numerous reported cases of mistaken
identity admonish the courts and juries to weigh circumstances
tending to establish identity, with abundant caution.  For
mere circumstances to be vested with the force of truth or con-
clusiveness, they must exclude every other hypothesis, and gener-
ate full belief.  It is then, and only then, that they inspire full
confidence."

Now, as to circumstantial evidence, as it applies to criminal
cases.  Circumstantial evidence is the proof of facts which stand

in such relation to the ultimate fact to be proved that such ultimate fact may be inferred from the fact proven. Each and every fact from which the existence of the ultimate fact to be proven is sought to be inferred, must be proven beyond a reasonable doubt, and the conclusion or inference of guilt should flow naturally from the facts proven. Mere opportunity to commit crime is not alone sufficient to prove that crime was committed. If the facts proven can be fairly and reasonably harmonized with the innocence of the defendant, they should be so reconciled.

In *Smith, Administrator,* v. *Curtiss,* 10 C.C.(N.S.), 149, a civil action to recover damages for negligence, the chain of circumstances shown by the evidence was more complete and convincing than in the case at bar. The trial court in that case directed a verdict at the conclusion of plaintiff's testimony. The circuit court, in affirming this judgment, said:

"The rule which permits the proving of the case by circumstantial evidence requires that the evidence shall be such that the court or jury can reason from established facts to well defined conclusions, and is not applicable if the conclusions are based in any degree on conjecture or speculation."

We must not overlook the fact that in civil cases the degree of proof is only by the preponderance of the evidence, while in criminal cases it must be beyond a reasonable doubt.

In another civil case, *Andrews* v. *L. S. & M. S. Ry. Co.,* 58 O. S., 426 (same case 64 O. S., 614), in what appeared to be a pretty conclusive case of circumstantial evidence, the Supreme Court held the evidence was not sufficient to go to the jury, and that a verdict for defendant should have been directed.

The charge in this affidavit that plaintiff in error was operating a motor vehicle at a rate of speed greater than fifteen miles per hour is not supported by any evidence whatsoever. The circumstance of ownership, if we should grant that that was properly shown, falls far short of proving that plaintiff in error was operating this car on said day, and plaintiff in error should have been discharged.

At the conclusion of the testimony on behalf of the prosecution in this case, the defendant did not take the stand to testify on his own behalf, and produced no other testimony in his defense, but relied upon his plea of not guilty. Counsel for the village contends that under our Constitution as amended in 1912, the fact that defendant did not take the stand to testify may be used against him. The provision of the Constitution to which counsel for the village refers will be found in Section 10 of Article I of the Constitution as amended on September 3, 1912, and is as follows:

"No person shall be compelled in any criminal case to be a witness against himself, but his failure to testify may be considered by the court and jury, and may be made the subject of comment by counsel."

This provision of the Constitution was not intended to and does not lessen the proof required on behalf of the prosecution before a conviction can be had in a criminal case, nor does it change the well settled rule of procedure that, before the defendant can be called upon to produce his defense, the state must prove every essential element of the crime charged. To hold otherwise would be doing violence to that part of the Constitution which says that no person shall be compelled in any criminal case to be a witness against himself. This provision of the Constitution was intended to apply when the state has shown by its evidence certain facts or chain of circumstances to exist, which, unexplained, are such as to overcome the presumption of innocence, and in such case, if the defendant should not take the stand to explain, it would be proper for the court and jury to take into consideration the fact that the one person who could explain had not done so. This provision of the Constitution does not aid the prosecution in this case.

The judgment of the lower court is reversed, and plaintiff in error discharged.